IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| VERONICA MUHAMMAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-09-968-D |
| | ) | |
| COMANCHE NATION CASINO, | ) | |
| | ) | |
| Defendant. | ) | |

# **O R D E R**

Before the Court is Plaintiff Veronica Muhammad's Motion to Remand to State Court [Doc. No. 11].[1] Defendant Comanche Nation Casino, which is a business enterprise of the Comanche Nation, has responded in opposition to the Motion and filed a supplemental brief, to which Plaintiff has replied. Also, Defendant recently filed a Notice of Supplemental Authority regarding a judgment favorable to its position obtained by the Choctaw Nation of Oklahoma and the Chickasaw Nation. *See Choctaw Nation v. Oklahoma*, Case No. CIV-10-50-W, Order (W.D. Okla. June 22, 2010). Plaintiff's Motion is thus at issue.

## **Procedural History**

Plaintiff commenced this action in the District Court of Comanche County, Oklahoma, on July 24, 2009, to recover damages for personal injuries sustained when she slipped and fell on Defendant's business premises. Her state court pleading alleged that the casino was owned and

---

[1] Immediately after removing this action to federal court, Defendant moved to dismiss it under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). While citing Rule 12(b)(1), Defendant argues in support of the Motion that the *state court* from which the case was removed lacked jurisdiction over the action, not that this Court lacks subject matter jurisdiction. Thus, a ruling on Defendant's Motion must await the resolution of Plaintiff's Motion, which challenges this Court's jurisdiction. A determination of federal jurisdiction is a threshold issue to be decided as a preliminary matter. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) ("jurisdiction generally must precede merits in dispositional order"); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("jurisdiction [must] be established as a threshold matter").

maintained by the Comanche Nation, which "is a tribal entity registered in the State of Oklahoma under the Compact so that this [state] court has jurisdiction over the persons and subject matter." *See* Notice of Removal, Ex. 1 [Doc. No. 1-1], Petition, ¶ 2. The referenced compact is the Tribal Gaming Compact Between the Comanche Nation and the State of Oklahoma. *See id.*, Ex. 3 [Doc. No. 1-3]. Plaintiff based her jurisdictional allegations on recent decisions of the Oklahoma Supreme Court holding that state district courts have jurisdiction over similar tort actions. *See Cossey v. Cherokee Nation Enter., LLC*, 212 P.3d 447 (Okla. 2009); *see also Griffith v. Choctaw Casino*, 230 P.3d 488 (Okla. 2009); *Dye v. Choctaw Casino*, 230 P.3d 507 (Okla. 2009).

Defendant removed the case to this Court by invoking "28 U.S.C. §§ 1331, 1441 and 1446." *See* Notice of Removal [Doc. No. 1] at 1. Explaining the existence of federal subject matter jurisdiction under § 1331 and the propriety of removal under § 1441(b), Defendant identified the following "federal question" raised by Plaintiff's action: "whether the State court has jurisdiction over a tort action arising in Indian country against the Nation." *See id.* (citing *Williams v. Lee*, 358 U.S. 217, 217-18 (1959)); *see also id.* ¶¶ 8, 18. Defendant stated that this issue is controlled by federal law, particularly the following sources: the Indian Commerce Clause of the Constitution, which divests states of authority over Indian tribes, *see* Const. art. I, § 8, cl. 3; Oklahoma's Enabling Act, which conditioned statehood on a disclaimer of jurisdiction over Indian tribes and tribal land, *see* Act of June 16, 1906, 34 Stat. 267-78;[2] federal legislation commonly known as Public Law 280, which established prerequisites to a state's acquisition of jurisdiction over civil actions against Indians arising in Indian country, *see* 18 U.S.C. § 1162; 25 U.S.C. §§ 1321-26; 28 U.S.C. § 1360;[3]

---

[2] In compliance with the Act, the Oklahoma Constitution "forever disclaims" all rights to tribal lands and expressly states that tribal lands "shall be and remain subject to the jurisdiction, disposal and control of the United States." *See* Okla. Const. art. I, § 3.

[3] Oklahoma has not satisfied any of the prerequisites for exercising such jurisdiction.

and the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-21, which authorizes states to acquire limited civil jurisdiction over Indian country through a tribal-state compact that authorizes such jurisdiction as necessary to enforce laws "that are directly related to, and necessary for, the licensing and regulation of [gaming] activity." *See* 25 U.S.C. § 2710(d)(3)(C)(ii). Defendant contended both that IGRA does not authorize a state to acquire jurisdiction of tort actions against a tribe and that the Compact at issue in this case does not authorize state courts to exercise such jurisdiction. This last argument, although contrary to the above-cited decisions of the Oklahoma Supreme Court, was supported in the Notice of Removal by affidavits of Governor Brad Henry and State Treasurer Scott Meacham, who negotiated and approved the Compact on behalf of the state. *See* Notice of Removal, Exs. 7-8 [Doc. Nos. 1-7 and 1-8].

Defendant also asserted that removal was appropriate under § 1441(b) based on the doctrine of complete preemption. Defendant supported this assertion with two contentions: first, that "the Indian Commerce Clause, Public Law 280, and federal common law completely preempt determination of the State's acquisition of civil jurisdiction over Indian country," *see id.* ¶ 19 (citing *Oneida Indian Nation v. Oneida County*, 414 U.S. 661, 677 (1974)); and second, that IGRA completely preempts Plaintiff's state tort action because such an action would subject the tribe to state court jurisdiction without its consent, in violation of the Compact, and would interfere with the tribe's governance of its gaming facilities in violation of IGRA and the Compact.

Plaintiff seeks a remand of the case pursuant to 28 U.S.C. § 1447(c). She asserts that, contrary to Defendant's allegations in the Notice of Removal, this civil action does not arise under federal law pursuant to 28 U.S.C. § 1331 and is not removable to federal court under 28 U.S.C. § 1441(b). Specifically, Plaintiff contends her state court petition presents no substantial federal question but only a question regarding the Compact "as created by the State of Oklahoma and

codified in its statutes." *See* Pl.'s Mot. Remand [Doc. No. 11] at 7; *see also* Okla. Stat. tit. 3A, § 281. Without expressly so stating, Plaintiff relies on the familiar principle that a federal claim must appear on the face of a well-pleaded complaint to establish federal jurisdiction. She contends her pleading asserts only a state law tort claim, not a claim arising under federal law, and that the doctrine of complete preemption is inapplicable under the circumstances. Plaintiff concedes that her tort claim implicates IGRA, specifically, 25 U.S.C. § 2710. *See* Pl.'s Mot. Remand [Doc. No. 11] at 8, 14. She argues, however, that IGRA authorizes states to acquire civil jurisdiction pursuant to a valid state-tribal gaming compact and that the Compact at issue has this effect. In her view, the Oklahoma Supreme Court has finally decided the IGRA and compact-interpretation issues, and "federal district courts do not have the authority to review matters that have been decided by the state courts." *See* Pl's Mot. Remand [Doc. No. 11] at 9 (quoting *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923)).[4]

## Standard of Decision

Defendant, as the party invoking federal jurisdiction, bears the burden of establishing the existence of original subject matter jurisdiction. *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001); *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Laughlin v. Kmart Corp.*, 50 F. 3d 871, 873 (10th Cir. 1995). The jurisdictional statute invoked by Defendant, 28 U. S. C. § 1331, authorizes federal district courts to hear civil actions "arising under the Constitution, laws or treaties of the United States." The removal statute cited by Defendant, 28 U.S.C. § 1441, authorizes a state court defendant to remove a case "when a federal court would have had jurisdiction if the case had been filed there originally." *See Topeka Housing*

_____

[4] Plaintiff also accuses Defendant of forum shopping, although she presents no case involving the Comanche Nation that has proceeded to judgment in state court. Only the Cherokee Nation and the Choctaw Nation were parties to the cases decided by the Oklahoma Supreme Court.

*Auth. v. Johnson*, 404 F. 3d 1245, 1247 (10th Cir. 2005); *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

To establish federal-question jurisdiction, the federal question giving rise to jurisdiction must be "presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392; *see also Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc*., 535 U. S. 826, 830 (2002); *Nicodemus v. Union Pac. Corp*., 440 F. 3d 1227, 1232 (10th Cir. 2006). Under this "well-pleaded complaint" rule, a suit "arises under federal law only when the plaintiff's statement of his own cause of action shows that it is based on federal law." *Turgeau v. Administrative Review Board*, 446 F. 3d 1052, 1060 (10th Cir. 2006) (internal quotation omitted). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392. However, "'a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of his claim.'" *Turgeau*, 446 F. 3d at 1060-61 (quoting *Schmeling v. NORDAM*, 97 F. 3d 1336, 1339 (10th Cir. 1996)); *see also Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22 (1983).

"A case 'aris[es] under' federal law within the meaning of § 1331 . . . , if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) (quoting *Franchise Tax Bd.*, 463 U.S. at 27-28); *Nicodemus*, 440 F.3d at 1232. The decision to provide a federal forum for resolving significant federal issues embedded in state-law claims rests on policy considerations that have prevented the Supreme Court "from stating a single, precise, all-embracing test." *See Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg*., 545 U.S. 308, 314 (2005) (internal quotation omitted). However, the Supreme Court has provided the following guidance:

[W]e [have not] treated "federal issue" as a password opening federal courts to any state action embracing a point of federal law. Instead, the question is, does a state claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

*Id.* The Court found federal jurisdiction to be warranted in *Grable* because the plaintiff's quiet title action depended on the adequacy of notice given by the IRS in a federal tax sale and the meaning of a federal tax statute was a pivotal issue in the case. The Court reasoned that the federal government had a strong and direct interest in the availability of a federal forum to determine this "important issue of federal law" and that the uniqueness of the situation would "portend only a microscopic effect on the federal-state division of labor." *Id.* at 315.

In *Nicodemus*, the court of appeals applied the reasoning of *Grable* to find the existence of federal-question jurisdiction for a state-law action involving claims of trespass, unjust enrichment, and slander of title. The defendant railroad held rights-of-way over the plaintiffs' property under federal land-grant statutes and all of the plaintiffs' claims hinged on whether the railroad's use of the rights-of-way had exceeded the purpose for which they were granted. *See Nicodemus*, 440 F.3d at 1234. Thus, a necessary step in resolving the plaintiffs' claims was a construction of the federal statutes that conferred the rights-of-way at issue, and the disputed interpretation of the statutes was a substantial federal issue and involved "considerable federal interests," including a direct interest of the federal government in a determination of property rights. *See id.* at 1236. Further, the court of appeals was "confident that providing a federal forum for the resolution of this issue will not disrupt 'the sound division of labor between state and federal courts.'" *Id.* at 1237 (quoting *Grable*, 545 U.S. at 313).

Another "independent corollary" to the well-pleaded complaint rule is the doctrine of complete federal preemption. *Caterpillar*, 482 U.S. at 393. This doctrine is reserved for situations

where "the pre-emptive force of the [federal] statute is so 'extraordinary' that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). This doctrine must be distinguished from federal preemption, which merely provides a defense to a state law cause of action and is not a proper basis for removal. *See Caterpillar*, 482 U.S. at 393.[5] Complete federal preemption renders a state law claim "necessarily federal in character" and creates federal jurisdiction. *See Schmeling*, 97 F.3d at 1339. The Tenth Circuit has explained its view of the doctrine as follows:

> We regard "complete preemption" as a term of art. We read the term not as a crude measure of the breadth of the preemption (in the ordinary sense) of a state law by federal law, but rather as a description of the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal.

*Schmeling*, 97 F.3d at 1342. Thus, "'complete preemption' refers to the replacement of a state cause of action with a federal one." *Id.*; *see Felix v. Lucent Tech., Inc.*, 387 F.3d 1146, 1156-57 (10th Cir. 2004); *accord Turgeau*, 446 F.3d at 1061.

## Discussion

It is undisputed in this case that Plaintiff intended to assert in her pleading a state-law tort claim within the jurisdiction of Oklahoma state courts under *Cossey*, *Griffith*, and *Dye*. The mere fact that the petition references the Compact – a tribal gaming compact made effective by IGRA –

---

[5] *See also Oklahoma Tax Commission v. Graham*, 489 U.S. 838, 841 (1989) (a defense of tribal immunity "does not convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law"); *State of Oklahoma ex rel. Oklahoma Tax Commission v. Wyandotte Tribe of Oklahoma*, 919 F.2d 1449, 1452 (10th Cir. 1990) (a state tax-collection case presented "a situation where the underlying right or obligation arises under state law and federal law is merely alleged as a barrier to its effectuation. Under *Graham*, this barrier does not convert this to a case arising under federal law") (internal quotation omitted).

does not mean that a federal question is presented. As the master of her claim, Plaintiff may avoid federal jurisdiction by exclusive reliance on state law, unless (a) she has simply failed to plead a federal question that is an essential element of her state-law claim or (b) her state-law claim is displaced by complete federal preemption. Because the Court finds the first circumstance is presented, it does not reach the second.[6]

A necessary element of the state-law claim asserted in Plaintiff's pleading is the legal right of the State of Oklahoma to exercise civil-adjudicatory authority over conduct by an enterprise of a federally recognized Indian tribe occurring on Indian lands. Plaintiff's state court petition plainly alleges that the slip-and-fall accident happened "on the premises of the Comanche Nation Casino which is owned and maintained by the Comanche Nation." *See* Petition [Doc. No. 1-1], ¶ 1. There is no question that the casino is located on "Indian lands" as defined by IGRA. *See* 25 U.S.C. § 2703(4). The issue of whether the State of Oklahoma can validly exercise authority over Indian lands presents a substantial question of federal constitutional, statutory, and decisional law, as explained by Defendant in the Notice of Removal and its motion papers. Concerns of comity and federalism notwithstanding, recent opinions issued by the Oklahoma Supreme Court that purport to resolve the issue presume the authority of state courts to apply federal laws and to interpret gaming compacts in effect between the State of Oklahoma and various Indian tribes.

---

[6] The Court notes, however, that Defendant does not identify any federal law that would replace Plaintiff's cause of action with a federal one. As to IGRA, only "those causes of action that would interfere with a tribe's ability to govern gaming fall within IGRA's complete preemption of state law." *See Gaming Corp. v. Dorsey & Whitney*, 88 F.3d 536, 548-49 (8th Cir. 1996); *see also Casino Res. Corp. v. Harrah's Entertainment, Inc.*, 243 F.3d 435, 438 (8th Cir. 2001). Another federal district court has expressly held that state-law claims based on slip-and-fall injuries occurring in tribal casinos are not completely preempted by IGRA. *See Keim v. Harrah's Operating Co.*, No. 09cv1732 BTM, 2010 WL 28536 (S.D. Cal. Jan. 5, 2010); *Kersten v. Harrah's Casino-Valley Ctr.*, No. 07cv0103 BTM, 2007 WL 951342 (S.D. Cal. Feb. 27, 2007).

A tribal-state gaming compact is a creation of IGRA, which determines its effectiveness and permissible scope. *See Seminole Tribe v. Florida*, 517 U.S. 44, 49 (1996); 25 U.S.C. § 2710(d)(3); *see also Cabazon Band of Missions Indians v. Wilson*, 124 F.3d 1050, 1056 (9th Cir. 1997); *Gaming Corp. v. Dorsey & Whitney*, 88 F.3d 536, 546 (8th Cir. 1996). To be valid and effective, a gaming compact must have been entered into by the state in compliance with state law, and it must be approved by the Secretary of the Interior; it takes effect upon publication of the Secretary's approval in the Federal Register. *See Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1557 (10th Cir. 1997); 25 U.S.C. § 2710(d)(3)(B). Thus, the compact's validity is governed by both federal and state laws. However, the interpretation of IGRA "presents a federal question suitable for determination by a federal court." *Kelly*, 104 F.3d at 1557. Further, an action seeking the enforcement of a tribal gaming compact arises under federal law. *See Cabazon*, 124 F.3d at 1056.[7]

The state court decisions upon which Plaintiff bases her state-law claim demonstrate the prevalence of federal law in determining the issue of whether the State of Oklahoma may exercise civil-adjudicatory jurisdiction over the matter. The Oklahoma Supreme Court reached its conclusions by examining the federal legal authorities cited in the Notice of Removal, namely, IGRA, Public Law 280 as amended by the Indian Civil Rights Act, and federal principles of tribal sovereignty, as well as federal rules of statutory construction. *See Cossey*, 212 P.3d at 453-59; *Griffith*, 230 P.3d at 491-92, 497-98; *Dye*, 230 P.3d at 509-10. Further, a key issue in the state court's initial decision was its view concerning the limited scope of tribal-court jurisdiction. *See*

---

[7] A tribal-state gaming compact is similar to a "congressionally sanctioned interstate compact the interpretation of which presents a question of federal law." *Cuyler v. Adams,* 449 U.S. 433, 442 (1981); *see also Texas v. New Mexico*, 462 U.S. 554, 564 (1983); *Tarrant Regional Water Dist. v. Sevenoaks*, 545 F.3d 906, 909 n.1 (10th Cir. 2008). "A compact is a form of contract." *Kelly*, 104 F.3d at 1558 (citing *Texas v. New Mexico*, 482 U.S. 124, 128 (1987)). "It remains a legal document that must be construed and applied in accordance with its terms." *See Texas*, 482 U.S. at 128.

*Cossey*, 212 P.3d at 453-56. In this case, by electing to file a state-court action rather than proceeding to tribal court as provided by the tort claim procedures applicable under tribal law, Plaintiff necessarily challenges tribal-court jurisdiction over her claim. *See* Notice of Removal, Ex. 4 [Doc. No. 1-4], § 104. Clearly, the question whether a tribe can compel a non-Indian to submit to tribal civil-adjudicatory jurisdiction "must be answered by reference to federal law and is a 'federal question' under § 1331." *National Farmers Union Ins. Co. v. Crow Tribe*, 471 U.S. 845, 852 (1985); *accord Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1501 (10th Cir. 1997).

The fact that a necessary step in the adjudication of Plaintiff's state-law claim will involve the resolution of a substantial federal question does not end the jurisdictional inquiry. The Court must also consider the nature of the federal interest at stake and any potential disruption of the balance of federal and state judicial responsibilities. Upon consideration of these issues, the Court finds that this case warrants an exercise of federal jurisdiction.

IGRA represents a balance struck by Congress among the interests of tribal governments, the states, and the federal government in gaming activities on Indian lands. *See Kelly*, 104 F.3d at 1548, 1555. This balance requires that two sovereign entities – a state and a tribe – enter into a valid compact and that they obtain federal approval of their agreement. The federal government has a strong interest in providing a neutral forum for the resolution of disputes concerning the proper interpretation of the agreement or, where the parties have agreed to arbitration, for the enforcement of a resolution reached in the arbitral forum. The federal government has a direct interest in the availability of a federal forum to determine the meaning of IGRA and compacts created under it, and to ensure that an approved gaming contract is enforced according to its terms.

IGRA expressly authorizes federal court jurisdiction for certain actions, such as actions by a tribe or state to enjoin a violation of a gaming compact. *See* 25 U.S.C. § 2710(d)(7)(A). The fact

that IGRA does not expressly authorize federal jurisdiction over this action, however, is not dispositive of whether a federal forum should be available to resolve the federal issues presented. The Court perceives no danger that an exercise of jurisdiction in this case will result in a shift of state tort litigation into federal court or will materially affect the normal division of labor between state and federal courts. Here, like *Nicodemus*, it will be a rare state common law claim that will so uniquely turn on a critical matter of federal law that an exercise of federal court jurisdiction will be warranted.

In sum, the Court finds the conclusions reached by the Tenth Circuit in *Nicodemus* are equally applicable here: "'[G]iven the absence of threatening structural consequences' and the importance for availability for a federal forum, 'there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of this state-law . . . claim.'" *Nicodemus*, 440 F.3d at 1237 (quoting *Grable*, 545 U.S. at 319-20) (alteration in *Nicodemus*).

## Conclusion

The Court finds Defendant has satisfied its burden to demonstrate the existence of federal jurisdiction. Therefore, this case was properly removed and will not be remanded at this time.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand to State Court [Doc. No. 11] is DENIED.

IT IS SO ORDERED this 28th day of September, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE